IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
(LOUISVILLE DIVISION)

| | |
|---|---|
| ARMONDO L. COCHRAN<br>1304 Oak Street<br>Shelbyville, Kentucky 40065 | PLAINTIFF |
| v. | Case No. 3:16-CV-788-JHM<br><br>Chief Judge Joseph H. McKinley, Jr. |
| MAINSOURCE BANK<br>201 North Broadway<br>Greensburg, Indiana 47240 | DEFENDANT |
| SERVE: Darryl R. Tressler<br>201 North Broadway<br>Greensburg, Indiana 47240<br>(BY CERTIFIED MAIL) | |

\*\* \*\* \*\* \*\*

**VERIFIED COMPLAINT**

Comes the Plaintiff, Armondo L. Cochran, by counsel, and for his Verified Complaint against the Defendant, Mainsource Bank ("Mainsource"), states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for negligence, defamation, violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., violation of the Kentucky Consumer Protection Act ("CPA"), KRS 367.170 et seq., conversion, breach of contract, and for punitive damages arising out of Mainsource's false reporting to Equifax, Experian and Trans Union ("the CRAs") of an

alleged delinquent debt of the Plaintiff, Mainsource's failure to investigate Plaintiff's dispute of the false, fraudulent and derogatory Mainsource tradeline, Mainsource's failure to correct its false, fraudulent and derogatory reporting on Plaintiff's credit reports, and Mainsource's willful conversion and wrongful respossession of Plaintiff's vehicle.

## II. PARTIES

2. Plaintiff, Armondo L. Cochran, is currently and was at all relevant times a citizen of the Commonwealth of Kentucky residing at 1304 Oak Street, Shelbyville, Kentucky 40065.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

4. Plaintiff is a "person" as that term is defined in the CPA, KRS 367.110.

5. Defendant, Mainsource, is an Indiana corporation doing business in the Commonwealth of Kentucky with its principal place of business at 201 North Broadway, Greensburg, Indiana 47240.

6. Mainsource is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

7. Mainsource is a "person" as that term is defined in the CPA, KRS 367.110.

## III. JURISDICTION

8. This Court has jurisdiction over this action: (1) pursuant to the FCRA, 15 U.S.C. §1681(p); (2) pursuant to 28 U.S.C. §1331; and (3) because the transactions and occurrences giving rise to this action occurred in Shelby County, Kentucky as a result of the Defendant's doing business in Shelby County, Kentucky.

## IV. FACTUAL BACKGROUND

9. At all relevant times, Plaintiff maintained five separate accounts at Mainsource, specifically, a personal checking account, a business checking account, a personal savings account, and two automobile loan accounts. The loan account at issue in this case is memorialized in a May

26, 2015 Closed-End Note, Disclosure, Loan and Security Agreement by and between Plaintiff and Mainsource by which Mainsource agreed to refinance Plaintiff's purchase of a 2010 Chevrolet Impala and Plaintiff agreed to make timely monthly payments of interest and principal to Mainsource.

10. In or around September 2015, Mainsource contacted Plaintiff by telephone and advised that, pursuant to a levy order entered by the Commonwealth of Kentucky, Mainsource was freezing $25,000.00 in Plaintiff's personal checking account. Mainsource further advised Plaintiff that the Commonwealth's levy order would expire on or about October 6, 2015.

11. On October 6, 2015, Mainsource contacted Plaintiff by telephone and advised Plaintiff that the levy had expired and that the previously frozen $25,000.00 in Plaintiff's personal checking account was available for use by Plaintiff.

12. On the afternoon of October 6, 2015, Plaintiff visited his Mainsource branch and obtained a cashier's check in the amount of $25,000.00. Later that afternoon, Plaintiff opened a checking account with Chase Bank and deposited the cashier's check in the Chase checking account.

13. Also on October 6, 2015, Plaintiff received a call from Mainsource advising that Mainsource wanted Plaintiff to return the $25,000.00 cashier's check Mainsource issued to Plaintiff. Plaintiff refused Mainsource's request based on Mainsource's representation concerning the expiration date of the levy and Mainsource's representation that the $25,000.00 was available for Plaintiff's use.

14. On October 7, 2015, Plaintiff withdrew $5,000.00 from the Chase checking account into which he deposited the $25,000.00 cashier's check from Mainsource.

15. On October 10, 2015, Plaintiff attempted to withdraw additional funds from his

Chase checking account but was advised by Chase that Mainsource had stopped payment on the cashier's check.

16. Subsequent to Mainsource stopping payment on the cashier's check, Plaintiff retained counsel to pursue repayment from Mainsource of the cashier check funds. Ultimately, in January 2016, Mainsource agreed to honor the cashier's check it provided to Plaintiff in October 2015.

17. In February 2016, approximately one week after Mainsource released the cashier's check funds, Mainsource wrongfully repossessed and converted one of the vehicles Plaintiff purchased pursuant to a loan agreement with Mainsource. Plaintiff, whose monthly loan payments were automatically deducted from his personal Mainsource checking account, had never missed or been late on any of his loan payments, and in fact continued to make his loan payments to Mainsource subsequent to the unlawful repossession.

18. In March 2016, Plaintiff, who was in the process of attempting to secure mortgage financing, discovered a false, fraudulent and derogatory tradeline on his Equifax, Experian and Trans Union credit reports furnished by Mainsource. The derogatory Mainsource tradeline stated that Mainsource had "charged off" a portion of Plaintiff's alleged debt on the unlawfully repossessed vehicle and also showed that Plaintiff's Mainsource loan account was allegedly "past due."

19. Upon his discovery of the Mainsource tradeline, Plaintiff immediately filed disputes with Equifax, Experian, and Trans Union.

20. Upon information and belief, Equifax, Experian, and Trans Union, pursuant to the requirements stated in 15 U.S.C. §1681i(a)(2)(A), notified Mainsource of Plaintiff's disputes at or within five (5) days of Equifax's, Experian's and Trans Union's receiving notice of the disputes

from Plaintiff.

21. In April 2016, Mainsource verified the false and fraudulent Mainsource tradeline on Plaintiff's credit reports.

22. Despite Plaintiff's lawful request for removal of the disputed item pursuant to the FCRA, Mainsource failed to investigate Plaintiff's dispute and failed to remove the disputed tradeline.

23. Mainsource failed to investigate Plaintiff's dispute, did not evaluate or consider any of Plaintiff's information, claims, or evidence, and did not make any and/or sufficient attempts to remove the disputed item within a reasonable time following Mainsource's receipt of Plaintiff's dispute.

24. Mainsource's actions have damaged Plaintiff in that Plaintiff has been denied credit and/or has been forced to pay a high rate of interest for credit due to the Defendants' false, fraudulent and derogatory reporting of Plaintiff's alleged "charged off" and "past due" debt to Mainsource and Mainsource's willful theft and conversion of Plaintiff's vehicle.

## V. CLAIMS

### Negligence

25. Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. Mainsource's failure to investigate Plaintiff's dispute and its false and fraudulent reporting to Equifax, Experian and Trans Union regarding the alleged past due account was negligent under applicable law. In falsely reporting the alleged past due account, Mainsource breached its duty to Plaintiff to report accurate information regarding Plaintiff's credit history and acted with conscious disregard for Plaintiff's rights.

27. Mainsource's failure to investigate Plaintiff's dispute and its false reporting to

Equifax, Experian and Trans Union regarding the alleged past due account has caused and continues to cause damage to Plaintiff, including, but not limited to, humiliation and embarrassment, a substantial decline in Plaintiff's credit rating, and other compensatory and consequential damages.

28. Mainsource's failure to investigate Plaintiff's dispute and its false reporting to Equifax, Experian and Trans Union regarding the alleged past due account were willful and wanton, entitling Plaintiff to punitive damages therefor.

### Defamation

29. Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 28 as if fully set forth herein.

30. Mainsource, with knowledge of the falsity of its statements, has published and continues to publish statements to others, including, but not limited to, Equifax, Experian, and Trans Union, and other currently unknown individuals and/or entities who have accessed Plaintiff's credit reports, that Plaintiff has a past due account with Mainsource. Mainsource's statements were false and were made with conscious disregard for the rights of the Plaintiff.

31. Mainsource's publication of false statements regarding Plaintiff's creditworthiness and Plaintiff's alleged due account amounts to defamation and defamation *per se* of the Plaintiff, entitling Plaintiff to compensatory, special, consequential and punitive damages therefor.

### Negligent Violation of the Fair Credit Reporting Act

32. Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33. Mainsource's failure to investigate Plaintiff's disputes and its initial and continuing false reporting to Equifax, Experian and Trans Union of Plaintiff's alleged past due account are

6

violations of Mainsource's duties as a furnisher of credit information pursuant to the FCRA, 15 U.S.C. §1681s-2(b).

34.   Mainsource's violations of the FCRA amount to negligent non-compliance with the FCRA as stated in 15 U.S.C. §1681o for which Mainsource is liable to Plaintiff for Plaintiff's actual damages, for statutory damages, and for Plaintiff's attorneys' fees.

### Willful Violation of the Fair Credit Reporting Act

35.   Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1 through 34 as if fully set forth herein.

36.   Mainsource's failure to investigate Plaintiff's disputes and its initial and continuing false reporting to Equifax, Experian and Trans Union of Plaintiff's alleged past due Mainsource account, despite Mainsource's knowledge of the falsity of its reporting, are willful violations of Mainsource's duties as a furnisher of credit information pursuant to the FCRA, as stated in 15 U.S.C. §1681s-2(b).

37.   Given Mainsource's knowledge of the falsity of its reporting, Mainsource's violations of the FCRA amount to willful non-compliance with the FCRA as stated in 15 U.S.C. §1681n for which Mainsource is liable to Plaintiff for Plaintiff's actual damages, for statutory damages, for punitive damages, and for Plaintiff's attorney's fees.

### Conversion / Wrongful Repossession

38.   Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39.   As stated above, Mainsource's repossession of Plaintiff's vehicle amounted to an unlawful conversion of Plaintiff's property by Mainsource for which Plaintiff is entitled to compensatory and consequential damages.

40. Mainsource's conversion of Plaintiff's property was intentional, willful, wanton and/or reckless entitling Plaintiff to punitive damages therefor.

### Breach of Contract

41. Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

42. On or about May 26, 2015, Plaintiff and Mainsource entered into the above-referenced loan agreement for Mainsource's refinancing of the 2010 Chevrolet Impala.

43. Mainsource's wrongful repossession and conversion of Plaintiff's vehicle amounts to a breach of the loan contract between Plaintiff and Mainsource.

44. Mainsource's breach of the loan contract entitles Plaintiff to compensatory and consequential damages therefor.

### Violation of the CPA

45. Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

46. As described above, by its -wrongful repossession and conversion of Plaintiff's vehicle, Mainsource engaged in unfair, false, and deceptive acts or practices in the conduct of its business with Plaintiff in violation of the CPA.

47. Mainsource's violation of the CPA entitles Plaintiff to compensatory, consequential and punitive damages therefor, and to an award of Plaintiff's attorneys' fees.

WHEREFORE, Plaintiff, Armondo L. Cochran, respectfully demands the following:

1. Trial by jury on all issues so triable;

2. Judgment against the Defendants for statutory, compensatory, consequential and punitive damages;

3. For attorneys' fees and costs; and,

4. Any and all other relief to which Plaintiff may appear to be entitled.

                Respectfully submitted,

                */s/David W. Hemminger*
                David W. Hemminger
                HEMMINGER LAW OFFICE, PSC
                616 South Fifth St.
                Louisville, KY 40202
                (Tel) 502.443.1060
                (Fax) 502.589.3004
                hemmingerlawoffice@gmail.com

## **VERIFICATION**

I, Armondo L. Cochran, hereby state that I have read the foregoing Verified Complaint and the statements contained therein are true and accurate to the best of my knowledge, information and belief.

_____
Armondo L. Cochran


| | |
|---|---|
| COMMONWEALTH OF KENTUCKY | ) |
| | ) SS |
| COUNTY OF SHELBY | ) |

Subscribed, sworn to and acknowledged before me by Armondo L. Cochran this ____ day of _____, 2016.

_____
Notary Public

Commission expires:_____